**Michelle JOHNSON, et al., Appellants**

v.

**DISTRICT OF COLUMBIA,**
**et al., Appellees.**

**No. 04–CV–1340.**

District of Columbia Court of Appeals.

Argued Dec. 9, 2005.
Decided Nov. 21, 2007.

---

1. It appears from the record that J.C. was not living with her father, at least not full time.

Reuben B. Collins II, for appellants.

Daniel A. Rezneck, Senior Assistant Attorney General, with whom Edward E. Schwab, Deputy Solicitor General for the District of Columbia, was on the brief, for appellees.

Before REID and KRAMER, Associate Judges, and LONG,* Associate Judge, Superior Court of the District of Columbia.

LONG, Associate Judge:

■ Appellants Michelle Johnson and Phillip M. Thompson are two police officers who unsuccessfully sued the District of Columbia for money damages, in connection with an internal investigation and temporary revocations of their police powers. They appeal from the grant of summary judgment in favor of the District of Columbia and three individual police officials, William Dandridge, Robert Moss, and Denise Calhoun. Although the complaint embraced myriad causes of action, the central feature of the lawsuit was a claim for relief pursuant to the District of Columbia Whistleblower Protection Act, D.C.Code § 1–615.51 *et seq.* (2001) (hereinafter the "WPA"), as well as a claim based upon the First Amendment.[1] The key question before us is whether the trial

---

* Sitting by designation pursuant to D.C.Code § 11–908(c) (2001).

1. The District of Columbia recognizes a cause of action for retaliation based upon a public employee's exercise of his or her First Amendment rights. The elements of this cause of action are summarized in *Leonard v. District of Columbia,* 794 A.2d 618, 629–30 (D.C. 2002) (citations omitted).

court erred in concluding that appellants failed to respond to the motion for summary judgment with a proffer of admissible evidence legally sufficient to entitle them to a trial.

The body of case law concerning the District's WPA is not extensive. Since the general jurisprudence of summary judgment often involves reversals, this appeal presents an opportunity to highlight why the law regarding summary judgment on WPA and First Amendment claims was correctly applied. Based upon the following analysis of the record and the applicable law, we conclude that appellees' entitlement to summary judgment is not a close question. We affirm, holding that the *McDonnell Douglas* burden-shifting standard was appropriately applied in favor of the appellees in the summary judgment analysis of both claims.

**Background of the Case.** Appellants included in their complaints claims for damages based upon intentional infliction of emotional harm and defamation. Appellant Johnson also made a claim of gender discrimination, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e–2 ("Title VII"). Nonetheless, we need not tarry on the historical details of all of the original claims, since the only claims subject to this appeal are those pertaining to the Whistleblower Protection Act and the First Amendment.

As a practical matter, the appellants do not dispute the fact that the Whistleblower Protection Act claim is so intertwined with the First Amendment claim that the disposition of one compels the same disposition of the other. Thus, for the sake of simplicity, we focus most of our discussion on the WPA claim.

Michelle Johnson and Phillip M. Thompson at all times relevant were employed as officers of the Metropolitan Police Department (hereinafter "MPD."). In 2001, they became the subject of an internal investigation within MPD. Their police powers were temporarily revoked by MPD on April 11, 2001. At the time of their suspension, appellants had been assigned to patrol the immediate area of Anacostia High School in the District of Columbia.

Essentially, appellants accused the District of Columbia and certain police officials of investigating and re-assigning them in retaliation for their expressions of opinion regarding the lack of a patrol car for their detail at Anacostia High School. They alleged that they were singled out for adverse employment action and various degrees of harassment, all because they repeatedly lobbied their supervisors for access to a patrol vehicle.

We summarize the essential chain of events. Appellants met on November 27, 2000 with Appellee William Dandridge, who was then the Commander of the Sixth District of the Metropolitan Police Department. They discussed the request for a patrol car, and they asserted that a patrol car would enhance their ability to enforce traffic laws and to ride through alleys so as to ward off armed robberies of students. They met on the subject once again with Dandridge on December 5, 2000, reiterating the safety concerns of the school's principal in the wake of several violent incidents. The issue of whether a patrol car would be added to the high school detail surfaced again, when Mildred Musgrove (principal of Anacostia High School) independently wrote to Dandridge on April 7, 2001. She wrote specifically about the advantages of a patrol car "as a deterrent to crimes against [her] students." In this lawsuit, the appellants cited the letter of Ms. Musgrove as an indication that their own views were worthwhile and supported by others as a community concern about effective law enforcement.

The record reflects that the official investigation and suspension of appellants arose, in a literal sense, from an intervening event that was completely unrelated to the scout car issue, *i.e.*, a complaint from a parent about alleged "excessive force" allegedly used by the appellants against a student. The Metropolitan Police Department temporarily revoked the police powers of the appellants and initiated a formal investigation of the excessive force complaint on April 11, 2001. On that very same date, the matter was formally referred to the Office of the United States Attorney for consideration of criminal charges against Officers Johnson and Thompson.

The excessive force complaint was based upon the following incident. It is uncontested that while detailed to Anacostia High School on December 6, 2000, Johnson and Thompson stopped a young female student who was attempting to exit the school and escorted her to the school's security office. A fight broke out in the security office between the appellants and the student. Johnson has never denied that she struck the student, although she asserted in her complaint that it was done in self-defense. The child's mother filed a complaint against both Johnson and Thompson with the MPD Office of Internal Affairs. The net result of the departmental investigation was that the appellants were exonerated. The Commander of the Sixth District issued a report to this effect on February 8, 2002. Johnson and Thompson were restored to full active duty in early March of 2002. Within days, they filed suit.

**Adjudication of the Motion for Summary Judgment.** Appellees filed a motion for summary judgment as to all causes of action. Judge Duncan–Peters filed a comprehensive opinion (hereinafter "Order"), articulating specific grounds on which summary judgment should be granted in favor of appellees as to all claims.

Judge Duncan–Peters, as a discretionary matter, rendered her decision assuming *arguendo* that the appellants could establish that their expressions of opinion about having access to a patrol vehicle were "protected disclosures" as defined by the WPA. Judge Duncan–Peters gave appellants the benefit of the doubt on the question of whether the verbal lobbying of the appellants constituted "protected disclosures." Even though we review summary judgment decisions *de novo,* we do not quibble with the trial court's practical approach to this element. We similarly assume that appellees made "protected disclosures."

**Relevant Statutory Framework.** Appellants portray themselves as "whistleblowers" because they believe that their advocacy for a scout car was unwelcome by the management of the Metropolitan Police. Similarly, they allege that they were singled out for retaliation for using their First Amendment rights to speak out within the police department concerning the public safety benefits of a scout car in their patrol area. Appellants view their advocacy for the scout car as an example of a "protected disclosure" that triggers certain legal protection under the WPA. The fundamental protection of government employees under the Act is set forth as follows:

> A supervisor shall not threaten to take or take a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure or because of an employee's refusal to comply with an illegal order.

D.C.Code § 1–615.53.

The WPA provides a specific, burden-shifting structure for the litigation of whistleblower claims. That structure is likewise the standard by which a summary

judgment disposition must be reviewed. The Code states:

> In a civil action or administrative proceeding, once it has been demonstrated by a preponderance of the evidence that an activity proscribed by § 1–615.53 was a contributing factor in the alleged prohibited personnel action against an employee, the burden of proof shall be on the employing District agency to prove by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by this section.

D.C.Code § 1–615.54(b).

The WPA defines "contributing factor" as "any factor which, alone or in connections with other factors, tends to affect in any way the outcome of the decision." D.C.Code § 1–615.52(a)(2).

Subsequent to the oral argument in this case, we issued a decision confirming that the liability standard in District of Columbia whistleblower cases must be applied pursuant to the same burden shifting analytical paradigm established for federal discrimination cases. *Crawford v. District of Columbia*, 891 A.2d 216, 221 (D.C.2006). That federal discrimination case law, in turn, developed from the now-familiar decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In *Crawford*, we adopted *McDonnell Douglas* as the burden shifting structure for WPA cases.

In *McDonnell Douglas*, the Supreme Court stated that the complainant in a Title VII trial must carry the initial burden under the statute of establishing a *prima facie* case of discrimination, that the burden then must shift to the employer to articulate some legitimate, nondiscrimina-

tory reason for the adverse action, and that the employee then bears the burden of proving that the employer's explanation "was in fact pretext." *McDonnell Douglas, supra,* at 804, 93 S.Ct. 1817.

In essence, this means that Johnson and Thompson were obliged to challenge the motion for summary judgment with a proffer of admissible evidence that their "protected activity" of advocating for a scout car was a "contributing factor" in their suspensions. Even assuming that the appellants had proffered such proof, the summary judgment motion would have been meritorious nonetheless if Johnson and Thompson could not counter the appellees' explanation that appellants would have been suspended anyway, for an unrelated, legitimate reason.[2]

**Analysis of the WPA and First Amendment Claims.** Our review of the trial court's decision is directed to two issues: (1) whether the appellants responded to the summary judgment motion with a sufficient proffer of a *prima facie* case and (2), even if they did, whether appellees nonetheless established—without evidentiary challenge—that the investigation and suspensions would have occurred anyway, for legitimate and independent reasons. In our *de novo* review, we conclude that the entry of summary judgment in favor of the appellees was entirely justified. Appellants failed to proffer proof of a *prima facie* case under either the WPA or the First Amendment. They also failed to muster any evidence of pretext, in comparison to the appellees' explanation for why the investigation and reassignments were made.

■ *Lack of a Prima Facie Case.* The real heart of the motion for summary judgment was lack of evidence on the causation

---

**2.** To be clear, countering the defense evidence does not mean totally disproving it. Rather, it means proffering contrary, admissible evidence that a jury might credit.

element, this being the "contributing factor" discussion. The issue was virtually identical where the First Amendment claim is concerned, because the appellants posited that their First Amendment rights were abridged in the form of retaliation for speaking their minds about the scout car issue. The alleged forms of retaliation were identical as to both causes of action.

■■■ Causation is all-important, because "while an employee makes a *prima facie* case by showing that the 'protected disclosure' was a 'contributing factor' to the disciplinary action, a jury must find a *direct causal link* in order for there to be liability under § 1–615.53." *Crawford, supra,* at 221 (emphasis added). Without question, "a whistleblower statute shields an employee 'only to the extent the record supports a finding that he would not have been disciplined *except for* his status as a whistleblower.'" *Id.* at 222 (quoting *Carr v. Social Security Admin.,* 185 F.3d 1318, 1325 (Fed.Cir.1999) (citation omitted) (emphasis added)). Essentially, then, liability under the Whistleblower Protection Act is measured under a "but for" analysis.

The trial judge succinctly concluded that appellants had utterly failed to proffer any evidence to establish a *prima facie* case. The trial court wrote:

> In the face of highly plausible evidence to the contrary, Plaintiffs' theory as to causation, supported only by their showing that it was *temporally possible* that retaliatory motive played a role in the actions taken against them, presents no genuine issue of fact for the fact-finder to decide.

Order at 8 (emphasis added).

On appeal, the appellees briefed in detail exactly what the appellants presented to the trial court. Having made our own review of the record, we are convinced that the lack of evidence of a *prima facie* case is beyond dispute.

In our own *de novo* review, we note that the lack of evidence of liability was revealed most vividly in the appellants' telltale answer to appellees' Interrogatory No. 3. Appellees proffered it as Exhibit B to their opposition to the motion for summary judgment. That interrogatory pointedly asked for a statement of evidence that would be presented at trial. It was an express demand for names of witnesses, documents, etc. The interrogatory itself was a roadmap for the detailed response that was required. Yet, inexplicably, appellants made no such response. Instead, they offered only conclusory argument, albeit in the guise of sworn evidence.

In its entirety, Officer Johnson's answer to the interrogatory was as follows:

> Plaintiff states that the basis of her D.C. Whistleblower Claim and her First Amendment Right to free speech is based on the subsequent actions by the Defendant when Plaintiff requested usage of a patrol car while she and her partner, Plaintiff Phillip Thompson, were on school patrol detail at Anacostia High School. Defendants retaliated against the Plaintiffs for disclosing the Department's disparate treatment of individual officers by subjecting them to a criminal and Internal Review Investigation that was based on facts that did not warrant continued review. Defendant's responses to Plaintiff's request for a squad car and disclosures coupled with the timing of Defendants retaliatory actions indicated that their request was a contributing factor in the revocation of Plaintiff's police powers and her subjection to an unwarranted investigation.

Johnson's reference to "timing" was only her theory and speculation that there was a "temporal" possibility for retaliatory action. Appellants implied to the trial court that this possibility arose only because the

MPD investigation commenced four months after the officers had begun to press for a scout car.

■ For several reasons, we reject the four-month lapse of time as proof of a causal connection between the protected disclosures and the adverse actions. First, a stretch of four months realistically cannot constitute temporal proximity in the ordinary sense of that phrase. Appellants do not even attempt to explain the causal significance of four months, as compared to any other length of time. We agree with another court's observation that "to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Rouse v. Farmers State Bank*, 866 F.Supp. 1191, 1200 (N.D.Iowa 1994) (quoting *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir.1985) (citations omitted)). Indeed, even a combination of "temporal proximity" (when established) and suspicion is not enough to avoid summary judgment. *Rouse, supra*, at 1209.

■ Secondly, we conclude that an inference of retaliation cannot rest solely on "temporal proximity" (even if it is established) where the opportunity for retaliation conflicts with the opponent's explicit evidence of an innocent explanation of the event. Here, that explicit evidence was the existence of the excessive force complaint. Where such explicit evidence remains unchallenged in the trial court, the defendant is entitled to a grant of summary judgment. In other words, mere suspicion coupled with mere possibility is not evidence of causation.

Where the First Amendment claim is concerned, our analysis is the same. It does not require extended dissection and discussion, because the standard for establishing the causation factor is an even higher hurdle for a plaintiff. The United States Supreme Court has held that in order to establish a *prima facie* case of retaliation for First Amendment activity, the plaintiff bears the burden of proving that the constitutionally protected "conduct was a 'substantial factor'—or, to put it in other words, that it was a 'motivating factor'" in the personnel action. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Since the appellants herein could not establish a prima facie case under the WPA, they clearly could not establish their First Amendment claim.

There is no evidence, on this record, that retaliation for First Amendment activity was a "motivating" factor in investigating the parent's complaint and in temporarily suspending these police officers. Here also, the use of the *McDonnell Douglas* burden shifting approach makes sense. Even though the trial court did not explicitly apply it by name, the trial judge did so by her decision-making. This analytical model clearly should be applied to First Amendment claims, because it fits the existing requirements of substantive law. We reach this conclusion for the same reason that we decided in *Crawford* to make *McDonnell Douglas* applicable to WPA claims.

We are convinced that in order to establish a *prima facie* case of retaliation in a claim under the WPA or the First Amendment, the appellants herein could not successfully rely only upon a combination of his or her own unsubstantiated beliefs and the mere temporal possibility of a connection between the protected activity and the adverse action. On this record, appellants cannot do so because such dual factors, without more, do not constitute competent

evidence of causation.[3] They do not constitute competent evidence of anything.

 **Lack of Evidence of Pretext.** Without question, the issue of demonstrating that the official decision to order the investigation and suspensions dissolves into the obligation to prove the motive for these decisions—a motive of retaliation. The nature of the prohibited personnel action itself can dictate the practical obligations of a WPA plaintiff, in responding to a summary judgment motion. Different kinds of personnel actions may be subject to different modes of proof (some testimonial, some documentary, etc.) Here, the appellants were required to respond to the motion for summary judgment with some type of admissible evidence which, if credited, could convince a reasonable trier of fact that a motive to retaliate "tended to affect" the decision to investigate the parent's complaint and suspend appellants.

In our *de novo* review of the record, we easily conclude that the appellees came forth with a logical and well-documented explanation for why the formal investigation was initiated and why the two appellants were temporarily suspended as fully empowered officers. This is no mystery: a parent had made a firm allegation that both appellants had manhandled her child. To boot, the record reflects that the Metropolitan Police Department took tangible investigative steps to confront the source of the complaint. The child in question was subjected to a polygraph test. Ostensibly, this was done in order to test her credibility on a preliminary basis. This shows that the investigative actions of the police officials dovetailed with the facial reason for the investigation. Obviously, a formal investigation was in order, because if the allegation proved to be credible, there was a clear basis for criminal prosecution and, most likely, termination from employment.

The burden shifted to the appellants to produce evidence of pretext. The appellants responded to the motion for summary judgment by attaching to their opposition sworn statements from Calhoun's deposition dated May 20, 2003, and appellant Johnson's Affidavit dated December 5, 2000, as well as other material, such as the report of the investigation itself.

The problem is that this material was not pertinent to the pretext issue. It did not illuminate anything whatsoever about the motive or partial motive for the investigation and suspension of appellants. Instead, this material was aimed at building further justification for the appellants' original demand for a scout car for their patrol assignment.[4] The appellants failed to carry their burden of producing evidence to contradict the appellees' explanation for why the investigation was initiated and why the police powers were temporarily revoked.[5]

---

3. Another court similarly has rejected a challenge to a defendant's summary judgment motion, where the only proffer of evidence of retaliation was the span of "several months" between the plaintiff's protected activity and the disputed adverse action. *See Bush v. Engleman*, 266 F.Supp.2d 97, 103 (D.D.C.2003) (Friedman, J.)

4. For example, appellants produced an affidavit from Mildred Musgrove, Principal of Anacostia High School, in which she summarized her contact with the 6th District of the Metropolitan Police Department, which was an attempt to improve the safety of her students by requesting a police car and deployment of officers to Anacostia High School.

5. We note that a very similar civil action was dismissed for lack of causation evidence in the United States District Court for the District of Columbia. That case was *Anderson v. Ramsey*, 2006 WL 1030155, 2006 U.S. Dist. Lexis 21034. In *Anderson*, employees of the Metropolitan Police Department sued the Chief of Police and others under a variety of theories that included a First Amendment claim and a WPA claim. Essentially, the

 We are constrained to say that a party cannot stave off a grant of summary judgment merely by filing any type of affidavit, sworn discovery material, or any document that merely happens to touch upon the subject matter of the case. The evidence proffered in opposition to a motion for summary judgment must be, on its own, clearly responsive to the factual requirements for proving liability. A plaintiff is doomed to suffer summary judgment by opposing the defendant's motion only with undisputed factual material. This is exactly what appellants did in the Superior Court.

In her ruling, Judge Duncan–Peters readily gave the appellants credit for coming forth with the following evidence: (1) a witness statement of Johnson on December 5, 2000, reporting that both appellants spoke with Dandridge regarding the need for a scout car; and (2) a letter dated April 7, 2001, from the Principal of Anacostia High School (Mildred Musgrove) expressing the advantages of the visibility of a scout car. Indeed, the trial judge accepted this proffer of evidence as being sufficient to demonstrate that appellants made "protected disclosures" under the WPA. Nonetheless, the appellants fell short because they proffered no evidence on what

would have been disputed at trial, *i.e.* causation and pretext. The idea that the appellees acted, even partially, with intent to retaliate collapsed into sheer speculation.[6]

 In summary judgment litigation, the quality of the response of the non-moving party is pivotal. "Mere conclusory allegations on the part of the non-moving party are insufficient to stave off the entry of summary judgment." *Musa v. Continental Ins. Co.,* 644 A.2d 999, 1002 (D.C. 1994) (citing *Graff v. Malawer,* 592 A.2d 1038, 1040 (D.C.1991)). In terms of the quality of what appellants proffered to Judge Duncan–Peters and what the important issues really were (causation and pretext), the response of the appellants to the motion for summary judgment never effectively moved beyond conclusory allegations.

*Affirmed.*

---

plaintiffs had suffered various adverse actions in connection with an investigation of excessive holding time for 911 calls and other derelictions of duty. The plaintiffs claimed, *inter alia,* that they were the victims of retaliation because (during the administrative investigation) they "spoke out" to the media about broader problems in public safety communications. The Hon. Gladys Kessler granted summary judgment in favor of the defendants, concluding that where plaintiffs cannot

establish causation on their First Amendment claim, they cannot do so on their WPA claim.

6. Appellants failed to produce, for example, any incriminating oral admissions of the individual police officials. There were no revealing or inculpatory documents, notes, or correspondence from police files, or anything else that might have reflected a peevish motive to retaliate.